Good morning, your honors. This is Frank Todry II, Senior Deputy Attorney General representing the appellants for the Nevada Department of Corrections and the state of Nevada. Thank you for your time and thank you to counsel for making this appearance by pro bono here in this matter. We are here specifically on whether a district court correctly denied qualified immunity on John our review is de novo. We would respectfully suggest that this court find that the state was entitled to qualified immunity on the 14th amendment as to whether minimum due process requirements were met under the U.S. Supreme Court test factors of Wolfe v. McDonald. Specifically, we would maintain that under the unique circumstances of this case, there is no clearly established law governing the maintenance of the evidence in question. The review is very distinct and singular. Does an inmate have unfettered access to copy evidence for a disciplinary proceeding when said evidence has already been sealed for another agency to conduct criminal investigations and proceedings? While the basic inquiry is... Did the hearings officer for the disciplinary proceeding have a copy of the envelopes in question? There is no, a small distinction, there is no Xerox copies of the front and the back. All that he had was photographs taken by the forensics team prior to the envelopes being exactly what it was the hearings officer had. That is something that is a little distinction that is not fully established on the record. In the complaint, Mr. Malnick advised that he had asked for envelopes, for copies of the envelopes and was denied. It is unclear until he discusses it a bit more in his objection whether he ever actually asked for copies of the front and the back. That is why he wanted the copies of it. I believe if he would have clearly asked for copies of the photographs, it would have been provided. Is there any kind of dialogue with him that said, for example, the envelopes themselves are unavailable, but we will give you a copy of this photograph that we have, that is the best we can do. Is there anything like that said to him? No, your honor. It appears that the first part of your statement is probably true, that it was advised that they are unavailable, but there is nothing on the record at least that suggested. So how is it he should be expected to divine what reason the state had for declining to show him anything and make precisely the request you suggest would have been honored? Well, your honor, the only information on the envelope itself, the only piece relied upon was the envelope itself for this. The only information on that envelope was the address, the name of sender, and the sendee. That information was provided within the officer's report. So he had all the germane evidence. I would suggest there is nothing he would have gained by seeing the front and back of the envelope. Well, you can that. Particularly given this is an envelope that is supposed to have been sent to him, and that he is found responsible apparently for having arranged the sending of, I am kind of baffled as to what it was that was supposed to be confidential that couldn't have been shared with has been sealed and taken away pursuant to Administrative Regulation 708. The NDOC defines any evidence that has been sealed for criminal proceedings to be confidential. What could possibly be confidential to Mr. Welnick about an envelope that he was held Well, the copies itself appear to be what were the confidential. The information was given by way of the officer's report. I am still not hearing what it is that is supposed to be confidential to him. He is convicted for arranging the sending of that envelope. So what exactly could be confidential to him? If it was sent by somebody else, if somebody was setting him up, yeah, that is confidential, but how is that something that should be deprived of Mr. Welnick? This doesn't make any sense to me. No, the only information that was actually entirely withheld as confidential was the informant name, which never even became part of the case. And was that on the envelope? Because if the answer is yes, then that is somebody he presumably was told about when he was given, you tell us, the information that was on the envelope. If the answer is no, then showing him the envelope or a copy of the envelope won't disclose the only information you have now defined as confidential. So I remain mystified as to what possible reason there could have been for not giving Mr. Welnick access to what was available. The only information that was on the envelope was the name Boo Saunders, would appear to be the sender. That information was in the officer report and at the disciplinary hearing, the photographs of the envelopes were presented to Mr. Melnick. Counsel, did the state ever argue either in the district court or on appeal that to determine qualified immunity, the court needs to look at the role of the individual defendants as opposed to the state as a whole? It did not present that in the lower court. So the state never, for example, argued to anybody that even if the hearing officer could be personally liable in damages, there's no evidence that the director of prisons could be liable. That's never an argument that was made by the state. Correct, Your Honor. There appear to be no individualized defendant arguments made in the summary judgment below. It was kind of just a part defendant. Or on appeal. Well, I did not feel it was prudent to bring up a point that had not been raised whatsoever in the lower court. The argument that the qualified analysis differs as to some defendants,  but that's not what happened. So, counsel, I'm not clear from your briefs. Does the state concede that the Morrisey right to disclosure of evidence against him was clearly established as opposed to the right to present documentary evidence, which are separate in Morrisey and separate in Wolfe? But are you conceding that the right to disclosure of evidence was clearly established at the relevant time here? Yes. I mean, I can't deny that one. Chief amongst the rights of due process is the ability to present documentary evidence. But I would set forth that. So, counsel, that wasn't my question. My question is, are you conceding that the right to disclosure of evidence was clearly established? As a general principle, yes, it is generally established. I'm merely submitting that this case falls under an exception here because the documentary evidence, the actual photocopies was not available because the envelopes are in a criminal vault. That's kind of the difference amongst quite a bit of the jurisprudence. He had all the information. Was he asking for the production of the actual envelopes or just a copy of the envelopes? There could not have been any. The only thing available was photographs. It's unclear that Malnick ever actually asked for a copy of the photographs. There's never a front and back Xerox copy of the envelopes ever made from what the record appears to develop. But could that have been made? Was there any impediment to making a photocopy rather than producing the original envelope? Is there no copy machine available where you could make a copy of the front and back and give that to him? The reticence submitted by the officer is that the envelopes are already sealed into the evidence vault. So, as far as a practical matter, probably... To me, it's understandable that there would be reticence to turn over the actual envelope that has been stored away in the evidence vault. Could they not have taken that envelope and made a copy of the front and back and given that to him? Probably could have. I presume that there is the office equipment in the evidence vault that could have been used. But that never occurred and the hearing officer stood by that this is confidential information and sealed in the vault. I'm not sure about... It wasn't developed whether this officer would have had the ability to get into the vault and open it. The evidence is generally just going to be sealed until the prosecuting agency gets to it. And then at that point, whether it be the AG or one of the county prosecuting agencies, they are permitted to give an order that sealed information can be back on the clock remodeled when you're up again. Thank you, Your Honor. I appreciate your time. I'll go on mute. Good morning, Your Honors. And may it please the court, you're a juvenile on behalf of Apolli, Mr. John Melnick. I'd like to address just some of the points you were discussing with counsel for the state. So, I think the most important factual difficulty here, and that needs to be level set on, is that there is no difference between asking for photographs of copies and asking for copies. And he only ever asked for copies. He never said, take the envelopes out of the safe. He said, please give me copies of the envelopes. And I'll point you to the record at ER 36, where he asked for copies of the envelopes. And I'll also point you to the first sentence of the district court's order, where the district court says, Mr. Melnick repeatedly asked for copies of the envelopes. Counsel, I'm having trouble with, notwithstanding your friend's concession, that the right to disclosure of evidence against him was clearly established. Because it certainly wasn't clearly established by Wolf, right? Your Honor, it was clearly established by Wolf. But Wolf talks about the six things in Morrisey, and it says in Wolf which of them are available to the jailed. And it did not say anywhere in the opinion that B, disclosure to the parolee of evidence against him, was established. So, Your Honor, a few points, if I may. First of all, this case is about, honestly, both the right to access the evidence against you, but also the right to present evidence in your defense. This is the only evidence he could have presented in his defense. But that's not what the district court said. The district court said the right that was clearly established was disclosure, right? Right. Because it was the evidence used against him. In this case, there's only one piece of evidence, and it's inculpatory and exculpatory, depending on how you look at it. So, is it your contention that when Morrisey talked about disclosure and the right to present the documentary evidence, that those two things mean exactly the same thing? For purposes of this case, yes. Because in this case, there is no delta between the two. But even if you don't agree with me, Your Honor, that this right is clearly established by Wolf, it is clearly established by the robust consensus of persuasive jury that came after Wolf. And I'll point you to... You cited lots of cases. Were you aware of the Fourth Circuit's view of this? Because I didn't see your citation to a Fourth Circuit case in your brief. Are you familiar with Young v. Lynch from 1988 in the Fourth Circuit? I'm not, Your Honor, but... Are you familiar with an unpublished decision from this court from 1992, Civic v. Clooney, where the court talking about Wolf and Morrisey specifically said, in particular, the court did not impose the requirement that prison officials disclose to the parolee all of the evidence against them in the inmate context? Are you familiar with that case? No, Your Honor. And the reason that those cases haven't come up, to be clear, is because the state has not cited any of those cases. It hasn't engaged in the process. So it's okay for you to say, here are the 10 cases that support your position, but if there are some that don't, not to cite them because the state didn't? Your Honor, I don't think those cases are identical facts to those here. The facts here are there's two pieces of evidence at issue completely. Those two pieces of evidence were given to the hearing officer at the hearing, but not to the defendant, not to the person whose circumstances Wolf doesn't apply. Well, why don't you go on, counsel? Sure. So moving back just to a couple of points that counsel on the other side made, there is no distinction between photographs of the evidence or copies of the evidence. That's what Mr. Melenik wanted. And the reason he wanted it wasn't for some sort of superficial reason that I think the counsel on the other side suggested. He wanted it because he did not have the information in these envelopes. He did not have the information that he needed to defend himself. The notice of charges gave two pieces of information. They said who the sender was of the first envelope, Boo Saunders, and they said the address of Boo Saunders. It had no information about the physical attributes of the first envelope at all, whether it had a postmark, whether it came from within the prison or anything like that. And even more fundamentally perhaps, the notice of charges didn't reveal at all that there was a second sender for the second envelope, and that the two envelopes did not purport to be from the same person. So it wasn't that he wanted pictures up front and back for just to have them. He didn't have the information he would need to mount a defense that he was set up. That's what was missing here, and that's what he was asking for. I'll return, though, to I think... Counsel, how is it that De Zeranda, the director of prisons, isn't entitled to qualified immunity? Your Honor, as counsel on the other side mentioned, they have never argued that there's a... I understand they've never argued it, but we need to look at the law, whether they've waived that in a way that prevents us from reaching it, is another question. But I want you to tell me how in the record we can find that De Zeranda, the director of prisons, doesn't have qualified immunity. Your Honor, this is a case of a repeated violation by the same prison of the issue here. The same prison violated the same regulation in Jones only six years before the conduct at issue took place here. So if there's ever a case for holding director of prisons liable, this would be one of them, because people kept making the same constitutional errors. So because the prison did something six years prior, as I understand it, at the time the complaint was filed, the grievance was still pending in front of De Zeranda, right? The decision in Jones came out in 2008. That's the case that he was looking at. No, but what I'm saying here is De Zeranda was the recipient of a second-level grievance here, right? And he hadn't responded to it at the time the complaint was filed here, right? Correct. So what conduct is it of his that violated your client's constitutional right that was clearly established? Well, first of all, he has never provided Mr. Melnick with copies of the envelopes. But putting that aside... The director of prisons didn't. I mean, Mr. Melnick asked everyone involved in this case for copies of the envelopes, and he kept following an instruction that everyone gave him to go escalate to the next level. That's what he did here. He kept escalating his request for the envelopes starting before the hearing all the way up, and he never got the copies of the envelopes. He still today has never seen the copies of the envelopes that took him to three years in disciplinary segregation. How about the warden? What did the warden do that makes him personally liable? Nevin? The same problem, Your Honor. They all were on notice that he was requesting copies of envelopes and that he was being put in disciplinary segregation as a result of an unfair hearing and did not step in and do anything about it, even though they had access to the envelopes and he did not. So there's an established constitutional right that the warden had to personally step in and do something to pull him out of administrative separation because of the due process violation. And for his failure to do that, he's liable in damages. Correct, Your Honor. And it's not... The clearly established principle here is the right at issue. It's the right to see the evidence against you and defend yourself. That's what was established The relevant officials that were charged here are the people who were involved in denying him that right. That's how the qualified immunity analysis works in this context. Had the state made a different argument and tried to get someone, switch in someone and say, you're actually the person you're upset at is this person said this person, that would have been an issue to the district court, but the state never did that. Your Honors, I have about a minute left and I just wanted to highlight the point I was just discussing with Judge Bennett, which is that Mr. Bennett was sentenced to three years in solitary confinement as a result of these disciplinary hearings. And he ultimately served a full 10 months in solitary, not to mention lost parole opportunities. He received that severe sanction as a result of two six-minute hearings that were back-to-back, at which he never saw the critical evidence used against him. Prisons are complex cases to administer, as I was discussing with Judge Bennett. But this case is not a closed one because defendants produced those very same copies for the hearing officer to review. And they have given no real reason today, or before this, or in their briefing, as to why they could not have done the same for Mr. Melnyk, whose liberty hung in the balance. It is defendants' burden to explain their denial of these envelopes. This case, this court has said that multiple times, including in Bostock, N. Smith, and McFarland. Defendants have not justified. They have said there's a unique wrinkle here, this evidentiary vault issue, but they haven't explained why that would have copies that they gave to the hearing officer. This court has made clear that administrative efficiency is not a reason to deny someone's wolf rights. You've said that in Bostock and in Maynard. This case is a very good example of why it's not enough. They had the copies of the envelopes. They were able to provide them to the hearing officer. That was the basis for Mr. Melnyk losing his liberty. And they have never explained why they couldn't have provided them to Mr. Melnyk. All right. Thank you, your honors. I'll be very brief. If I'm going to simplify this, this isn't a matter of administrative efficiency. It's never been claimed to be a matter of administrative efficiency. This is just a matter of it's reasonable for a hearing officer not to produce copies of a It's a reasonable mistake. There's no clear notice that he needed to get something that an AR says is confidential. With that, I'm going to just quickly touch on the director and the warden. Neither of these individuals were either director or the warden of this institution when the eight years ago issue occurred. We can't say that they're on clear notice of this being a years ago. We would submit that this panel still has the authority to make a correction, even if this wasn't argued at the lower court case, that a director would be entitled to qualified immunity on a possible mistake that a hearing officer made when he's not involved with the process. With that, I appreciate everybody's time and thank you very much. All right. Thank you to both of you for your argument today. The matter is submitted.
judges: Clifton, Nguyen, Bennett